


IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| LORI D. CANTRELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 08-G-1803-S |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OPINION**

The plaintiff, Lori D. Cantrell, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

**STANDARD OF REVIEW**

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239.

**STATUTORY AND REGULATORY FRAMEWORK**

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether she has a severe impairment;

(3) whether her impairment meets or equals one listed by the Secretary;

(4) whether the claimant can perform her past work; and

(5) whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers. Id.

In the instant case, ALJ Randall C. Stout determined the plaintiff met the first two tests, but concluded that while the plaintiff's impairments of "mild degenerative disc disease of the lumbar spine with a slight degree of spondylolisthesis at L5/S1 (status post lumbar laminectomy in 2001); functional diarrhea; anxiety; and depression" are "severe" in combination, they did not meet or medically equal a listed impairment. [R. 20]. The ALJ found that the plaintiff retains the residual functional capacity to perform unskilled light work involving occasional contact with the public and fellow employees. [R. 27]. Accordingly, the ALJ found the plaintiff was not disabled within the meaning of the Act.

**THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY**

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required. The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers withing the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the Commissioner to establish that he can perform other work. In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed. This is so even if no other hypothetical question is posed to the VE. See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail). However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony or the testimony of his doctors is credited. Such a hypothetical question would allow disability

claims to be expedited in cases in which the ALJ's refusal to credit that testimony is found not to be supported by substantial evidence.

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law. Id at 1401. The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims." Id. If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand. As Varney recognized, if the VE testifies the claimant can perform no jobs if his pain testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited. Id. This also holds true for the opinions of treating physicians.

**DISCUSSION**

The plaintiff was 49 years old at the time of the ALJ decision. The ALJ found the following severe impairments: mild degenerative disc disease of the lumbar spine with a slight degree of spondylolisthesis at L5/S1 (status post lumbar laminectomy in 2001); functional diarrhea; anxiety; and depression. The plaintiff underwent back surgery in 2001, which apparently was successful. Her treating physician, Gilbert M. Aust, M.D., in October 2003, reviewed an MRI which showed no recurrent herniation. [R. 120]. In November 2003, Dr. Aust released her to return to work "regular duty." [R.

121]. At the hearing, the plaintiff testified that her pain was a five when she is on medication, and a seven when she is off her medicine. [R. 281].

Prem K. Gulati, M.D., performed a consultative physical exam on October 12, 2005. Her chief complaint was low back pain since 2001, aches and pains in both hands for a long time. [R. 170]. Dr. Gulati noted, "This was a very difficult history to take as the patient was a little bit rude and as I tried to take the history from the patient she started crying." [Id.]. His examination of the plaintiff's back was as follows:

> Revealed no spasm. There was a very well healed scar. No tenderness in the lower LS spine area. Range of motion of the dorsolumbar spine was normal. The patient had no difficulty getting on and off the examination table. The patient was walking with a limp[;] there was no ataxia. The patient was not able to squat and rise up, was able to heel and toe walk without any difficulty.

[R. 171-172]. "X-rays of the LS spine were performed which revealed very mild degenerative changes in the lower lumbar spine with slight spondylolisthesis of L4L5 level. Otherwise unremarkable." [R. 172]. Dr. Gulati's impression was possible herniated disc with possible left lower leg neuropathy secondary to previous herniated disc in 2001, status post laminectomy, hypertension, status post carpal tunnel surgery on the right, and possible depression with suicidal ideation. [Id.]. Dr. Gulati concluded, "This is a 46 year old white female who had surgery to the lower back with slight decrease in sensation in the left lower extremity. It is my impression that this lady may not be able to do lifting, carrying types jobs but may be able to do sitting jobs without any difficulty." [R. 173].

W. D. McDonald, Ph.D., a licensed psychologist, performed a consultative psychological examination at the behest of the Commissioner on October 20, 2005. [R. 175-178]. Dr. McDonald recorded the plaintiff's history:

> She stated that she feels severe anxiety on a daily basis. She also admits that she has probably been quite depressed since 2003. She reported dysphoric mood, crying spells, sleeping difficulties, appetite disturbance, loss of pleasure and interest, social withdrawal, feelings of helpless and hopelessness, and thoughts that others would be better off if she were not around. She denied any specific suicidal ideation or intentions.

[R. 175]. "Ms. Cantrell admitted that she has been arrested on four occasions for DUI. Her last arrest was two years ago. She was also arrested approximately twelve years ago for disorderly conduct." [R. 176]. Dr. McDonald recorded the plaintiff's daily activities:

> Ms. Cantrell stated that she is up and down throughout the night. She gets up in the morning in order to get her daughter off to school and her husband off to work. She then goes back to bed for awhile. She spends her day doing various household chores, watching television, caring for her dogs, and talking on the telephone. She has no social life and rarely leaves the home. She stated that she is very uncomfortable about going out into public. She has "no interest". [sic] In general, she leads a very restricted lifestyle.

[R. 177]. His diagnostic impression was major depression, recurrent, moderate severity, anxiety disorder NOS, possible panic disorder, and history of alcohol abuse. [Id.]. He assessed her GAF at 50.[1] [Id.]. He found her medical problems appear "to be chronic

---

[1] The Global Assessment of Functioning (GAF) Scale is used to report an individual's overall level of functioning. Diagnostic and Statistical Manual of Mental Disorders 30 (4th Edition) ("DSM-IV"). A GAF of 41-50 indicates: "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM-IV at 32. Several courts of appeal have, in unpublished or nonprecedential opinions, considered the impact of a claimant's GAF score of 50 or below. The courts

(continued...)

and possibly progressive. Her psychiatric symptoms would probably improve considerably with appropriate psychiatric treatment." [R. 178]. Dr. McDonald commented:

> Ms. Cantrell views herself as disabled because of her chronic pain and chronic fatigue. She does not believe anyone will hire her because of her history of back surgery. At this time, she is extremely depressed and has a high degree of anxiety. She is not receiving any psychiatric treatment. She admits that she has failed to take antidepressant medications when they were prescribed. She also admits that she is drinking which might be exacerbating her depressive symptoms. Her concentration and short-term memory appear to be at least moderately impaired. Her ability to interact appropriately with others, deal with supervisors, coworkers, and the public is severely impaired. She seems generally capable of managing any financial benefits that she may receive.

[Id.].(emphasis added)

The ALJ chose to rely on the state agency reviewing psychologist, Gordon J. Rankart, Psy.D:

---

[1] (...continued)
generally find that a GAF score of 50 or below is not in and off itself determinative of disability. See Hillman v.Barnhart, 48 Fed Appx. 26, 2002 WL 31260962 at * 3, n.1(3rd Cir. 2002)(not precedential)(noting that a GAF of 50 would indicate a claimant could perform some substantial gainful activity); Rutter v. Comm'r of Soc. Sec., 91 F.3d 144 (Table), 1996 WL 397424 at *2 (6th Cir. 1996)(unpublished opinion)(exclusive reliance on GAF score not appropriate); Roemmick v. Shalala, 59 F.3d 176 (Table), 1995 WL 299894 at *2, n.1 (9th Cir. 1995)(noting that an inability to work is only one example of the level of adaptation meriting a GAF of 40); Seymore v. Apfel, 131 F.3d 152 (Table), 1997 WL 7555386 at *2 (10th Cir. 1997)("Contrary to claimant's contention, a GAF rating of 45 may indicate problems that do not necessarily relate to the ability to hold a job; thus standing alone without further narrative explanation, the rating of 45 does not evidence an impairment seriously interfering with claimant's ability to work.); Stalvey v. Apfel, 242 F.3d 390 (Table), 2001 WL 50747 at *2 (10th Cir. 1999)("The GAF is not an absolute determiner of ability to work."). But cf. Lloyd v. Barnhart, 47 Fed. Appx. 135, 2002 WL 31111988 at *1, n.2 (3rd Cir. 2002)(not precedential)(noting that a vocational expert at the administrative hearing testified that a GAF of 50 or lower would indicate claimant would not be able to keep a job).

> He evaluated the claimant's mental impairments under the requirements of Medical Listings 12.04 and 12.06, and found resulting mild restriction of daily activities, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace, with no repeated episodes of decompensation, each of extended duration. He found no apparent history of psychiatric hospitalizations or treatment with mental health professionals. Dr. Rankart found that the claimant is able to comprehend and recall brief and uncomplicated instructions; and able to carry out short and simple instructions. He found that her attention and concentration were adequate for two-hour periods across and [sic] eight-hour workday. He found her sustained concentration and persistence adequate if she is given a flexible schedule and all allowable breaks. Dr. Rankart stated that the claimant is capable of appropriate social interaction if it is casual and moderately limited with the public and co-workers.

[R. 22].

The ALJ did not find the plaintiff's pain allegations credible. [R. 26]. He also did not find her allegations regarding irritable bowel syndome to be credible:

> The undersigned notes that the claimant does not have a verifiable diagnosis of irritable bowel syndrome, and her workups have been negative for that condition. She simply has episodes of functional diarrhea and the possibility of gastroenteritis. In July 2006, her treating physician, Dr. Fanning, stated that the "bowel movement problems she says have been going on for years and I have never made a diagnosis" (Exhibit 11F).
>
> The claimant testified that she must go to the bathroom seven or eight times on a good day, and that she has to wear a pad at night. However, her gastric problems are not shown to be that severe, because she does not have irritable bowel syndrome, only episodes of functional diarrhea. Significantly, in spite of the claimant's alleged frequent bowel movements, she is actually gaining weight rather than losing it.

[R. 26].

The ALJ discounted the opinion of the Commissioner's own consultative psychological examiner, concluding that his findings were inconsistent with the record.

[R. 27]. The ALJ stated, "Dr. Rankart noted that Dr. McDonald's opinion regarding the claimant's limited social abilities in the workplace was based on one interview and is not supported by the overall evidence of record." [R. 27]. He then goes on to adopt the opinion of the State Agency medical consultant, who never once examined the plaintiff. [Id.]. The ALJ's conclusion is not supported by substantial evidence.

The present case bears a resemblance to the situation in Wilder v. Chater, 64 F.3d 355 (7th Cir. 1995). In that case the court was faced with an ALJ who had improperly ignored the opinions of a consulting psychiatrist who was appointed by the Commissioner. The Wilder court observed:

> We are led to consider with a degree of suspicion the administrative law judge's decision to go against the only medical evidence in the case, that of a psychiatrist not retained by the applicant but appointed by the administrative law judge himself to advise on Wilder's condition. . . . The psychiatrist's testimony, though conclusional (but then no one pressed him to elaborate the grounds for his conclusions), was the only direct testimony concerning the critical issue of the date of onset of Wilder's disabling depression. Severe depression is not the blues. It is a mental illness; and health professionals, in particular psychiatrists, not lawyers or judges, are the experts on it. The question what stage a physical or mental illness had probably reached some years before it was first diagnosed is a medical question, and the uncontradicted evidence of the only disinterested expert to opine upon it is entitled to considerable weight. We do not say conclusive weight; but the facts on which the administrative law judge relied to contradict that evidence are singly and together unimpressive.

Id. at 337 (emphasis added)(citations omitted).

An ALJ is not allowed to make medical findings or indulge in unfounded hunches about the claimant's medical condition or prospect for improvement. He is not free to base his decision on such unstated reasons or hunches. Judge Johnson eloquently

stated the proper role of an ALJ in his concurring opinion in Marbury v. Sullivan, as follows:

> An ALJ sitting as a hearing officer abuses his discretion when he substitutes his own uninformed medical evaluations for those of claimant's treating physicians: "Absent a good showing of cause to the contrary, the opinions of treating physicians must be accorded substantial or considerable weight by the Secretary." Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988). . . . An ALJ may, of course, engage in whatever idle speculations regarding the legitimacy of the claims that come before him in his *private or personal capacity*; however, as a hearing officer he may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional.
>
> Because the ALJ made no factual findings supporting an inference that the treating physicians were incompetent or otherwise failed to perform their duties in a professional manner, the ALJ's decision not to credit seriously the medical diagnoses indicating psychogenically caused seizures cannot stand. . . .
>
> Although Social Security disability benefits must be reserved only for those who qualify to receive them, an ALJ may not arrogate the power to act as both judge and physician. The ALJ in this case clearly exceeded his legal authority by allowing his personal views regarding the non-physical source of Marbury's seizure disorder to interfere with his responsibilities to administer fairly the Social Security disability programs. On remand, let us hope that the ALJ refrains from playing doctor and instead satisfies himself with merely serving as a judge.

957 F.2d 837, 840-41 (11th Cir. 1992)(italics in original)(emphasis added).

In the present case, it is apparent that ALJ Stout has abused his discretion by substituting his own medical judgments for those of the Commissioner's own consulting psychologist, Dr. McDonald. While rejecting this opinion, the ALJ recites the evaluation by a non-examining medical consultant to find the plaintiff has the residual functional capacity to perform a reduced range of medium work, although the ALJ gave

the plaintiff "partial credibility and . . . reduced that to light work." [R. 27]. This reliance is improper in this Circuit:

> The reports of reviewing nonexamining physicians do not constitute substantial evidence on which to base an administrative decision. Spencer on Behalf of Spencer v. Heckler, 765 F.2d 1090 (11th Cir.1985); Strickland v. Harris, 615 F.2d 1103 (5th Cir.1980). The good cause required before the treating physicians' opinions may be accorded little weight is not provided by the report of a nonexamining physician where it contradicts the report of the treating physician. Johns v. Bowen, 821 F.2d 551 (11th Cir.1987). "The opinions of nonexamining, reviewing physicians, ... when contrary to those of examining physicians are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence." Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir.1987).

Lamb v. Bowen 847 F.2d 698, 703 (11th Cir. 1988). In this case, as in Lamb, "the weight accorded the observations of the nonexamining physicians by the [ALJ] was inconsistent with the proper legal procedure." Id.

At the hearing, the VE testified that given the ALJ's stated residual functional capacity for the plaintiff, she could perform the requirements of several unskilled light jobs, such as ticket marker, mail sorter and photocopy operator. [R. 293]. The ALJ's examination of the VE continued:

> Q: If the Claimant had to miss two or more days on a monthly basis, as the result of illnesses or physical condition, and/or perhaps a mental condition, would that affect the wide world of unskilled work?
>
> A. Yes, sir, that also precludes all work activity.

[R. 294].

The court concludes that substantial evidence does not support the ALJ's decision not to credit and to ignore the opinion of the Commissioner's consulting

psychologist. Based upon Dr. McDonald's opinion that the plaintiff's ability to interact appropriately with others, deal with supervisors, coworkers, and the public is severely impaired, and the testimony of the VE, the Commissioner failed to carry his burden at step five of showing the plaintiff could perform other work. Accordingly, the plaintiff is disabled within the meaning of the Social Security Act. An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

DONE and ORDERED 20 July 2009.

UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.